UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIE C.,[1]<br><br>   Plaintiff,<br><br>  v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>   Defendant. | Case No. 25-cv-02632-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 10, 15 |

Plaintiff Jennie C. moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled between January 31, 2015 and January 23, 2019, and therefore denied her application for benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* for that period. [Docket No. 10-1 (Pl. Br.).][2] The Commissioner cross-moves to affirm. [Docket No. 15 (Def. Br.).] For the reasons stated below, the court denies Plaintiff's motion and grants the Commissioner's cross-motion.

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on June 29, 2015, alleging disability beginning January 31, 2015. Administrative Record ("AR") 176–78. An Administrative Law Judge ("ALJ") held a hearing on July 11, 2017 (AR 40–83) and issued an

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Although Civil Local Rule 7-2(b) requires parties to file "one filed document . . . contain[ing]," among other things, the notice of motion and "points and authorities in support of the motion," Plaintiff filed her notice of motion and opening brief as separate documents. [Docket No. 10 (Notice of Mot.); Docket No. 10-1 (Pl. Br.).]

unfavorable decision on February 9, 2018 (AR 16–39). Plaintiff appealed and, on May 5, 2020, this court affirmed the ALJ's decision. AR 970–82; *Contreras v. Berryhill* ("*Contreras I*"), Case No. 19-cv-00305-DMR, Docket No. 25.

Plaintiff appealed the court's order to the U.S. Court of Appeals for the Ninth Circuit. *Contreras v. Kijakazi* ("*Contreras II*"), Case No. 20-16300. On July 28, 2021, the Ninth Circuit granted the parties' joint motion for vacatur and remand to this court, "with instructions to remand to the agency for further proceedings consistent with the United States Supreme Court's decision in *Carr v. Saul*, 141 S. Ct. 1352 (2021)." *Contreras II*, Docket No. 32. The Ninth Circuit did not reach the merits of Plaintiff's appeal.

On September 17, 2021, this court remanded the case to the Social Security Administration for further proceedings consistent with *Carr*. *Contreras I*, Docket No. 32. On April 12, 2022, the Appeals Council vacated the Commissioner's final decision and, consistent with the U.S. Supreme Court's ruling in *Carr*, remanded the case for a new hearing with a different ALJ than the one who issued the February 9, 2018 decision. AR 985 ("While the case was pending in federal court, the claimant raised a challenge under the Appointments Clause of the Constitution, U.S. Art. II § 2, cl. 2, to the manner in which the Administrative Law Judge was appointed. In accordance with the district court's remand order, this case is remanded to a different Administrative Law Judge in light of the ruling in *Carr v. Saul*, 593 U.S. \_\_\_\_\_ (2021).").

The ALJ held a hearing on September 20, 2023. AR 916–45. On October 17, 2023, ALJ issued an unfavorable decision. AR 885–915. The ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the cervical spine status post anterior cervical discectomy and fusion, degenerative disc disease of the lumbar and thoracic spine, obesity, carpal tunnel syndrome status post releases, asthma, and chronic obstructive pulmonary disease. AR 891. The ALJ found that Plaintiff retains the following residual functional capacity ("RFC"):

> [Plaintiff could] perform light work as defined in 20 CFR 416.967(b) except she should not climb ladders, ropes, and scaffolds. She could occasionally climb ramps and stairs. She should not be required to balance as defined in the SCO [Selected Characteristics of Occupations]/DOT [Dictionary of Occupational Titles]. She could occasionally stoop, kneel, crouch, and crawl. She could frequently handle, finger, and feel bilaterally. She should not work at

> unprotected heights or have the operational control of moving, dangerous machinery. She should not work around concentrated levels of fumes, odors, dusts, gases, and poor ventilation.

AR 897.

The ALJ further found that, "[p]rior to the established disability onset date, the claimant was an individual closely approaching advanced age." AR 904; *see* 20 C.F.R. § 416.963(d) (a "[p]erson closely approaching advanced age" is "age 50–54"). However, "[o]n January 24, 2019, [Plaintiff's] age category changed to an individual of advanced age." AR 904; *see* 20 C.F.R. § 416.963(e) (a "[p]erson of advanced age" is "age 55 or older").

A vocational expert ("V.E.") testified that, prior to January 24, 2019, an individual with Plaintiff's RFC could perform other jobs existing in the economy, including Sales Attendant, Marker, and Cashier II. AR 904–05, 939–41. Relying on this testimony, the ALJ concluded that Plaintiff "was not disabled prior to January 24, 2019, but became disabled on that date and has continued to be disabled through the date of [the ALJ's] decision." AR 905–06.

After the Appeals Council denied review (AR 1013–18), Plaintiff sought review in this court pursuant to 42 U.S.C. § 405(g).

## II. ISSUES FOR REVIEW

Plaintiff argues the ALJ erred when she (1) afforded little weight to the opinion of Plaintiff's treating physician, Dr. Juan Posada, M.D., (2) found that Plaintiff's testimony was not credible, and (3) posed incomplete hypothetical questions to the VE, which resulted in unreliable testimony.

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), *as amended* (Aug. 12, 1996) (cleaned up). When

performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (cleaned up).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (cleaned up).

## IV. DISCUSSION

Plaintiff seeks review of the ALJ's finding that Plaintiff was not disabled between her alleged onset date of January 31, 2015 through January 23, 2019. Pl. Br. at 3.

### A. The ALJ's Weighing of Medical Evidence

Plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting the opinion of treating physician J. Posada, M.D.

#### 1. Legal Standard

"For social security disability claims filed prior to March 27, 2017, an ALJ is required to assess medical opinions 'based on the extent of the doctor's relationship with the claimant.'" *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (quoting *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022)). As Plaintiff filed her application for disability benefits on June 29, 2015, the pre-March 27, 2017 framework applies. *See* AR 176–78. Under this framework, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Id.*

1     "If the opinion of an examining doctor is contradicted by another doctor, it 'can only be
2  rejected for specific and legitimate reasons that are supported by substantial evidence in the record.'"
3  *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (quoting *Lester*, 81 F.3d at 830–31). "An ALJ
4  needs less substantial evidence to reject an examining physician's opinion than to reject an [*sic*]
5  treating physician's opinion." *Id.* The ALJ can meet her burden "by setting out a detailed and
6  thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof,
7  and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "[B]road and vague"
8  reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). A non-examining
9  physician's opinion alone cannot constitute substantial evidence to reject the opinion of an
10 examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v.
11 Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be
12 persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th
13 Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial
14 evidence when it is consistent with other independent evidence in the record"); *Magallanes v.
15 Bowen*, 881 F.2d 747, 751–55 (9th Cir. 1989) (upholding rejection of treating physician's opinion
16 given contradictory laboratory test results, reports from examining physicians, and testimony from
17 claimant). An opinion that is more consistent with the record as a whole generally carries more
18 persuasiveness. *See* 20 C.F.R. § 416.927(c)(4).

19            **2.     Analysis**

20     Treating physician Dr. Posada submitted two medical source statements dated May 8, 2017
21 and July 25, 2017. AR 429–32, 656–61. In each, Dr. Posada indicated that his first appointment
22 with Plaintiff was on April 4, 2016. AR 429, 657.

23     In his May 8, 2017 medical source statement, Dr. Posada diagnosed Plaintiff with carpal
24 tunnel syndrome, cervical spine stenosis, sciatica, chronic back pain, asthma, migraines, chronic
25 depression, and knee pain. AR 429. He opined that Plaintiff could walk half a block without rest
26 or severe pain; sit for 6–7 minutes at a time before needing to get up; stand for 8 minutes at a time
27 without needing to sit down or walk around; and sit, stand, and walk for less than one hour total in
28 an eight-hour workday. AR 430. Dr. Posada further opined Plaintiff can rarely lift less than

1    10 pounds and never lift more than 10 pounds; occasionally look down; rarely turn her head right
2    or left, look up, or hold her head in a steady position; rarely twist; and never stoop, crouch, climb
3    ladders, or climb stairs. AR 431. Dr. Posada indicated that Plaintiff's symptoms would constantly
4    interfere with the attention and concentration necessary to perform even simple work tasks. AR 430.
5    He opined that she would miss work more than four days per month because of her conditions.
6    AR 432. According to Dr. Posada, these limitations first began in 2004. *Id.*

7    In his July 25, 2017 medical source statement, Dr. Posada again diagnosed Plaintiff with
8    carpal tunnel syndrome, cervical spine stenosis, and depression. AR 657. The July 25, 2017
9    statement also included new diagnoses of anxiety, hypertension, migraine headaches, coronary
10   artery disease, bowel incontinence, sleep apnea, insomnia, pre-diabetic, and congestive heart failure.
11   AR 657. It did not include diagnoses of sciatica, chronic back pain, asthma, or knee pain. *See id.*
12   The limitations he assessed in the second opinion are similarly restrictive as those in his May 8,
13   2017 statement. *Compare* AR 658–60 *with* AR 430–32. He also added that Plaintiff has significant
14   limitations with reaching, handling, and fingering, and can perform these activities for only 30
15   minutes of an 8-hour workday. AR 658.

16   The ALJ afforded "Dr. Posada's opinions . . . little weight due to their lack of support and
17   inconsistency with the medical evidence." AR 902. As to the May 8, 2017 statement, although
18   Dr. Posada indicated that Plaintiff's limitations first began in 2004, the ALJ found that he "ignore[d]
19   about a decade of work after this time" and that Dr. Posada's opinion was "inconsistent with the
20   imaging and physical examination findings in the record[.]" *Id.* This included findings that Plaintiff
21   "had quite minimal lumbar and thoracic findings and little in the way of lower extremity findings";
22   Plaintiff's "gait, strength, sensory, and reflex findings were inconsistent and often good or normal";
23   and Plaintiff's "range of motion findings were inconsistent and sometimes normal[.]" *Id.*

24   The ALJ similarly afforded Dr. Posada's July 25, 2017 statement little weight. *Id.* The ALJ
25   explained that "the physical examination findings are not consistent with the record as a whole and
26   while there are some cervical findings, these alone are not consistent with this level of limitation,
27   particularly in light of the strength, sensory, and reflex findings[.]" AR 902–03. For instance, the
28   ALJ found that while Dr. Posada noted "migraine headaches that are severe" (AR 657), Plaintiff

6

"had quite conservative migraine treatment and her reports were quite inconsistent and sporadic" (AR 903). The ALJ further found that Dr. Posada's opinion that Plaintiff had "constant interference with concentration, the neck movement, absences, positional changes, and again, very limited exertional limitations . . . are simply not supported, nor consistent with the objective findings." AR 903. The ALJ also gave little weight Dr. Posada's November 15, 2019 treatment note that Plaintiff was permanently disabled, as "[t]his is a finding reserved to the Commissioner and is not entitled to special significance (20 CFR 416.927(d)(3))" and "is not consistent with the actual physical examination and most of the imaging findings[.]" AR 903.

A careful review of the record confirms the ALJ's finding that Dr. Posada's opinions lack sufficient support. Although Plaintiff underwent a number of tests between 2015 and 2017, none showed any significant findings.

A May 2015 x-ray of Plaintiff's lumbar spine showed "[f]ive non-ribbed lumbar vertebral bodies in normal alignment without evidence of spondylolysis or spondylolisthesis", "[n]o acute compression deformities", and "[n]o significant degenerative changes[.]" AR 353–54. A June 2015 MRI of the lumbar spine showed normal vertebral alignment, marrow signal, vertebral height, and disc space height; no disc protrusion or extrusion; no spinal stenosis; and no neural foraminal stenosis. AR 354–55. A July 2015 nerve conduction study ("NCS") and electromyography ("EMG") were normal and were largely "consistent with a prior EMG/NCS report dated 4/2/12[.]" AR 335–36. A November 2015 CT scan showed that Plaintiff had "[m]ultilevel degenerative disease of the cervical spine, including osteophytosis, calcification of the posterior longitudinal ligament, and disc space narrowing notably at C5–C7." AR 352. There was "[n]o subluxation or dislocation seen," prevertebral soft tissues were unremarkable, and there was "[n]o significant stenosis" in the spinal canal. *Id.*

November 2015 progress notes by rheumatologist Neera Narang, M.D. state that "[s]ome of the symptoms described are quite extreme including bowel/bladder accidents due to [Plaintiff] not making it to the bathroom in a timely fashion[.]" AR 386. "[H]owever, given [Plaintiff's] relatively normal exam and ability to 'get up and go' from her chair quite well[,]" Dr. Narang was "not sure there is an organic explanation for these reported symptoms." *Id.* Dr. Narang was "in agreement

7

with ongoing neurosurgical and podiatric consultation and d[id] not see a systemic rheumatologic explanation for her findings." *Id.*

On December 14, 2015, Plaintiff saw neurosurgery physician Jason I. Lifshutz, M.D. AR 389. Plaintiff reported to Dr. Lifshutz "issues related to her low back, as well as feet going on for two years", "numbness in her feet", "back pain with pain radiating down her left lower extremity", and "neck pain with numbness and tingling in her arms whenever she does activities." AR 389. In contrast to her complaints to Dr. Narang (AR 386), Plaintiff "denie[d] any bladder and bowel difficulties" (AR 389). Dr. Lifshutz "note[d] there is very poor effort given on the motor examination" and that Plaintiff's "MRI showed no evidence of any stenosis." AR 389–90. Although he recommended cervical and thoracic spine MRIs due to Plaintiff's neck issues, Dr. Lifshutz concluded that "[a]t this point in time I do not have a good explanation for her pain" and that "no surgical intervention is required that I could see." AR 390.

Dr. Narang saw Plaintiff again on January 26, 2016. AR 607–08. Dr. Narang noted that Plaintiff's "symptoms have not been correlated well with objective findings – L-spine imaging, EMG/NCS, and neurosurgery evaluation have failed to uncover a clear etiology for these severe, function-limiting symptoms" and that "[a]t this time, her symptoms do not fit well with a systemic rheumatologic issue." AR 607.

In March 2016, Plaintiff received an MRI of her cervical spine, which showed moderate cervical spondylosis, but no evidence of cord compression, abnormal intramedullary cord signal, or enhancement to suggest active demyelinating plaques. AR 440–41. An April 2016 MRI showed "[m]inimal broad-based disc bulges at L4–5 and L5–S1 without significant central canal stenosis or neuroforaminal narrowing." AR 821. There were "[n]o cord signal abnormalities." AR 822.

Plaintiff's March 2017 MRI of the lumbar spine was "unremarkable." AR 717. During a July 13, 2017 appointment, Plaintiff denied any headache, neck pain, generalized or focal weakness, or numbness. AR 666–67. Plaintiff's neck exhibited painless range of motion, was non-tender, and had no vertebral tenderness. AR 668. An inspection of Plaintiff's back was normal with no tenderness. *Id.*

In light of the above, the court finds that the ALJ did not err in affording Dr. Posada's

opinions little weight. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings.") (citation omitted). Plaintiff cites a number of records that she contends support Dr. Posada's opinion regarding the severity of her ailments. Pl. Br. at 14. The court disagrees.

Plaintiff underwent surgery for carpal tunnel syndrome in August and November 2016. AR 1821–22, 1856–57. Plaintiff points to a post-surgery May 2017 EMG study of her wrists, which showed moderately-severe carpal tunnel syndrome in both wrists. Pl. Br. at 14 (citing AR 594). Plaintiff does not explain, or point to any records explaining, how these findings affect her manipulative abilities, nor does she reconcile the post-surgery medical records that show no abnormalities. Indeed, on May 3, 2017—the same month as her EMG study—Plaintiff's grip strength in her hands was "equal and strong." AR 487. During a review of symptoms in July 2017, Plaintiff denied experiencing any generalized weakness or numbness. AR 666–67.

Plaintiff cites 2014 and 2015 records showing treatment for foot, leg, and ankle pain, and noted problems with her gait and balance. Pl. Br. at 14 (citing AR 270, 286, 292, 294, 313, 318–19, 321, 325, 372, 379, 387–93). Plaintiff also argues that she was prescribed a cane in 2015 to help her walk. *Id.* (citing AR 368). However, substantial evidence shows that Plaintiff exhibited a normal, intact, or steady gait on March 17, 2016; January 12, 2017; February 25, 2017; March 18, 2017; May 6, 2019; February 10, 2021; May 24, 2022; November 11, 2022; February 3, 2023; April 23, 2023; May 1, 2023; May 3, 2023; May 8, 2023; and June 17, 2023. AR 721, 730, 737, 836, 1327, 1396, 1590, 1671, 2114, 2150, 2151, 2163, 2179, 2211, 2258, 2260; *see* AR 2164 ("Negative for back pain, gait problem and neck pain"); AR 2259 ("Negative for back pain, gait problem, neck pain and neck stiffness."). On March 21, 2016, while being examined for headaches, Plaintiff was observed as exhibiting "no weakness, no problem with equilibrium[.]" AR 612. Plaintiff also inconsistently reported using a cane. In April 2016, Plaintiff reported using a cane for two months (AR 457), but in June 2016 and April 2017, she circled "no" in response to the question "Do you have physical disabilities? (use a cane or walker, have problems moving an arm or leg in a certain way)" (AR 495, 572). In light of this substantial evidence, the court cannot find that Plaintiff's

prescription for a cane demonstrates a limitation of her mobility.

Plaintiff also relies on a March 2016 MRI, which showed moderate cervical spondylosis, but no evidence of cord compression or abnormal intramedullary cord signal, and an April 2016 MRI, which found mild to moderate central canal stenoses and degenerative changes at C4-C7, as well as cervical spine fusion surgery on September 25, 2017, as additional support for Dr. Posada's opinions. Pl. Br. at 14 (citing AR 441, 828, 830, 1762). In March 2016, Dr. Lifshutz "recommended surgery of C6 corpectomy with a possible posterior fusion in a second sitting if needed[.]" AR 647. On September 25, 2017, Plaintiff underwent C3-6 laminoplasty, with C7 superior laminectomy, C5-7 left foraminotomy, C5-7 hardware placement and C5-7 bilateral interbody fusion. AR 1762–65.

Plaintiff fails to identify evidence showing that the surgery was not successful. Plaintiff does not explain how these MRIs and her surgery are not accounted for in the ALJ's RFC finding that she should not climb ladders, ropes, and scaffolds; could occasionally climb ramps and stairs; should not be required to balance as defined in the SCO/DOT; and could occasionally stoop, kneel, crouch, and crawl. Moreover, Plaintiff's surgery, in and of itself, is not indicative of a functional limitation, particularly where she reported no back or neck pain or stiffness on February 3, 2023; March 9, 2023; April 26, 2023; and May 3, 2023 (AR 2164, 2193, 2239, 2259) and, as noted above, she was observed as having a normal gait on multiple occasions between 2019 and 2023.

In light of the above, the court finds there is substantial evidence supporting the ALJ's decision to afford Dr. Posada's opinion little weight.

### B. The ALJ's Credibility Finding

Plaintiff argues the ALJ erred in finding she was not fully credible.

#### 1. Legal Standard

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Hum. Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted). An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citing 42 U.S.C. § 423(d)(5)(A)). However, if an ALJ discredits a claimant's subjective symptom

10

testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Id.* at 972 (cleaned up); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (an ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony"). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. § 404.1529; *Smolen*, 80 F.3d at 1281 (citations omitted). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. § 404.1529(b); *Smolen*, 80 F.3d at 1281–82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The Ninth Circuit has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

### 2. Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported[.]" AR 898. Although Plaintiff had been "treated for pain, . . . her providers were unable to find objective clinical or

diagnostic findings that correlated with her symptoms (see, e.g., 5F/21-22; 14F/5)." *Id.* In addition, Plaintiff "attested to quite limited activities of daily living and loss of functioning, but the medical evidence is not consistent with the level of limitations alleged." AR 900.

The court finds that the ALJ provided specific, clear and convincing reasons for the adverse credibility finding, which is supported by substantial evidence. As discussed above, the medical records do not substantiate Plaintiff's reports of severe impairment. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). For instance, Plaintiff was prescribed a cane in 2015 (AR 368) and testified that she has used a cane every day since 2018 (AR 935). However, she was observed exhibiting a normal, intact, or steady gait on numerous occasions between 2018 and 2023. AR 1327, 1396, 1590, 1671, 2114, 2150, 2151, 2164, 2163, 2179, 2211, 2258, 2259, 2260. In addition, in June 2016 and April 2017, she circled "no" in response to the question "Do you have physical disabilities? (use a cane or walker, have problems moving an arm or leg in a certain way)." AR 495, 572.

In fact, medical providers themselves repeatedly noted that the alleged severity of Plaintiff's self-reported symptoms was not consistent with their findings, and that she displayed poor effort during examinations. In November 2015, Dr. Narang noted that "[s]ome of the symptoms are quite extreme, including bowel/bladder accidents due to pt not making it to the bathroom in a timely fashion – however, given her relatively normal exam and ability to 'get up and go' from her chair quite well, I'm not sure there is an organic explanation for these reported symptoms." AR 386. In December 2015, Dr. Lifshutz "note[d] there is very poor effort given on the motor examination[.]" AR 389. In January 2016, Dr. Narang assessed Plaintiff as "4+/5 strength on the RUE (?limited by effort) . . . otherwise 5/5 strength." AR 605. In March 2016, Cheryl Pan, M.D. stated that "[p]atient is very pleasant, but not a reliable historian." AR 610. A July 17, 2017 medical source statement

from an unidentified physician indicated that Plaintiff is a malingerer.[3] AR 652. In July 2018, while being evaluated for right leg pain, Plaintiff was observed as exhibiting "poor effort" during her physical examination. AR 359.

Plaintiff also inconsistently reported symptoms. For instance, in November 2015, she reported to Dr. Narang having "bowel/bladder accidents" (AR 386) but "denie[d] any bladder and bowel difficulties" the following month (AR 389). Plaintiff also "denie[d] incontinence" in March 2016. AR 611.

In light of the above, the court finds the ALJ did not err in discounting Plaintiff's subjective testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (Claimant's "efforts to impede accurate testing of her limitations support[ed] the ALJ's determinations as to her lack of credibility."); *Gracy B. v. Kijakazi*, No. 20-CV-01241-SP, 2022 WL 971336, at *6 (C.D. Cal. Mar. 30, 2022) ("Even without an affirmative finding of malingering, an ALJ may rely on a claimant's poor effort as a reason to discount his or her symptom testimony.") (citing *Collins v. Astrue*, No. CV07-08082OP, 2009 WL 1202891, at *5–6 (C.D. Cal. Apr. 27, 2009)).

### C. The ALJ's Hypothetical Questions

Plaintiff argues the ALJ failed to pose a complete hypothetical question to the VE that included the limitations identified in Dr. Posada's medical source statements and Plaintiff's testimony. Pl. Br. at 12. As the court finds the ALJ did not err in affording Dr. Posada's opinions little weight or discounting Plaintiff's testimony, the court finds that the ALJ's did not err in failing to consider this evidence in posing hypotheticals to the VE.

## V. CONCLUSION

For the reasons stated above, the court denies Plaintiff's motion and grants the Commissioner's cross-motion. The clerk of court shall enter judgment in favor of the Commissioner and close the file in this matter.

//

//

---

[3] This physician indicated that he had first seen Plaintiff on November 21, 2016 and saw her bi-monthly.

**IT IS SO ORDERED.**

Dated: December 30, 2025

_____
Donna M. Ryu
Chief Magistrate Judge